UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GARY LA BARBERA, et al.,

                Plaintiffs,

- against -

ESL HOME REMODELING INC.,

                Defendant.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**

06 CV 1372 (ARR)

      Plaintiffs Gary LaBarbera and Frank Finkel, Trustees of Local 282 of the International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the "Funds"), filed this action on March 24, 2006 against defendant ESL Home Remodeling Inc., d/b/a E S L Home Remodeling Inc. ("ESL"), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), seeking to recover delinquent contributions owed to the Funds. Plaintiffs also seek a permanent injunction enjoining defendant from violating the Collective Bargaining Agreement and Declaration of Trust, thereby requiring defendant to submit the required contribution reports and payments in accordance with the rules governing the Funds.

      On July 11, 2006, after defendant failed to file an answer or otherwise move with respect to the Complaint in a timely manner, the Clerk of the Court entered a default with respect to this action. By Order dated July 12, 2006, the Honorable Allyne R. Ross, United States District Judge, referred the matter to the undersigned to determine whether entry of a default judgment is appropriate and to conduct an inquest on damages.

## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multi-employer benefit trusts that provide fringe benefits to employees performing services within the jurisdiction of Local 282 of the International Brotherhood of Teamsters (the "Union"). (Compl. ¶¶ 2-4).[1] Defendant is a corporation that maintains its principal place of business in Howard Beach, New York, and is a signatory to a Collective Bargaining Agreement with the Union (the "CBA"). (Id. ¶¶ 6, 8). Pursuant to the CBA and Declaration of Trust, as amended, defendant is required to pay fringe benefit contributions to the Funds based on work performed within the Union's jurisdiction by defendant's employees. (Id. ¶ 8; Schreiber Aff. ¶ 4, Ex. A).[2] Defendant is also required to file remittance reports and to allow plaintiffs to examine and audit the pertinent payroll books and records of the defendant to ensure that the proper number of hours are credited to the individual employees. (See Compl. ¶¶ 25, 26(e); Schreiber Aff. ¶¶ 5, 6). Based on work performed, plaintiffs have determined that defendant owed the Funds $4,464.84 in fringe benefit contributions and/or delinquency charges for the periods of September 2005 and January 2006. (Compl. ¶ 9). Despite demands for payment, defendant has not paid these contributions. (Id. ¶ 10).

On March 24, 2006, plaintiffs filed this action, seeking an award of delinquent contributions, interest, liquidated damages, and attorneys' fees and costs, as authorized by 29 U.S.C. § 1132. When defendant failed to answer, plaintiffs filed a request for entry of a default

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, dated March 23, 2006.

[2] Citations to "Schreiber Aff." refer to the Affirmation of Avram H. Schreiber, Esq., dated August 8, 2006 and submitted in support of plaintiffs' claims for damages, and all exhibits attached thereto.

judgment. Thereafter, defendant submitted reports for the period of weeks ending June 2, 2006 through June 30, 2006. (Schreiber Aff. ¶ 8). Under the fourth cause of action in the Complaint, plaintiffs seek "any additional contributions and/or delinquency charges which may become due and owing." Accordingly, plaintiffs seek damages in the amount of delinquent contributions, interest, and liquidated damages owed in conjunction with the weeks ending September 23, 2005, January 6, 2006 through January 27, 2006, May 26, 2006, and the weeks ending June 9, 2006 through June 16, 2006, plus attorneys' fees. (Id. ¶ 9). The issue of damages was referred to this Court by Order dated July 12, 2006.

## DISCUSSION

A.  Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for default judgments, which first requires the entry of a default and then entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Rule 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). The court clerk automatically enters the default pursuant to Rule 55(a) by noting the party's default on the clerk's record of the case. See Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a

motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. See, e.g., Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 19, 1992) (internal citations omitted). Here, plaintiffs submitted a request for both entry of default and default judgment on June 30, 2006. The Clerk of Court entered a default on July 11, 2006.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d at 277. While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[ ] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and any doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiffs are not entitled to a default judgment as a matter of right, simply because the defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993).

The court possesses significant discretion, and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (internal citations omitted). The more money involved, the less justification there may be for entering the default judgment. See id. Additionally, a court may

consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, §§ 2685, 2688.

Having reviewed the record, this Court respectfully recommends that default judgment be entered in favor of the plaintiffs. The Complaint clearly sets forth facts establishing a claim that the defendant violated Section 1145 of ERISA, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, plaintiffs have alleged that ESL, as an employer, was obligated under the CBA with the Union to make contributions to the Funds, and that defendant has failed to comply with its contractual obligations. Accordingly, given defendant's default, liability has been established.

B.  Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158, 161 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup,

Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158 (internal citations omitted); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993). Thus, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

However, while "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (gathering cases). Here, where the plaintiffs have filed reasonably detailed affirmations and exhibits pertaining to the damages incurred, and where the defendant has failed to make an appearance in the case, the Court can make an informed recommendation regarding damages without holding an evidentiary hearing.

1) Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the damages that shall be awarded when judgment is entered in favor of the plan are statutorily specified. See 29 U.S.C. § 1132(g)(2). These include:

> (A) the unpaid contributions,

(B) interest on the unpaid contributions,
(C) an amount equal to the greater of--
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995).

According to Article IX of the Declaration of Trust, which governs the various Funds in this action,[3] the employer is obligated to pay certain designated late charges whenever the employer fails to pay contributions within five business days after the contributions become due. (Schreiber Aff. ¶ 10, Exs. B, C). Pursuant to an amendment to the Restated Agreement and Declaration of Trust adopted on October 28, 2003, interest on unpaid contributions is calculated at 18%. (Id. ¶ 10, Ex. B[4]). In addition, the Declaration of Trust indicates that plaintiffs are entitled to liquidated damages calculated at the rate of 20% of the delinquency and reasonable attorneys' fees incurred in the matter. (Id. ¶ 10, Ex. C)

---

[3]The CBA incorporates the "Trust Agreements governing the Local 282 Welfare, Pension, Annuity and Job Training Trust Funds." (See Schreiber Aff. ¶ 7, Ex. A § 13(G)).

[4]Exhibit B, which was provided in support of plaintiffs' interest calculations, is illegible. It appears to indicate that interest shall be calculated at "the rate of 1 1/1% per month." (See id., Ex. B). The Schreiber Affirmation indicates that interest is to be calculated at 18% per annum. Accordingly, the Court has used the rate of 1½ % per month, which is the equivalent of 18% per year, in its calculations of interest due on the delinquent contributions.

2) Calculation of Default Judgment Damages

a) Delinquent Contributions

In their application, plaintiffs seek delinquent contributions owed to the Funds for various time periods. (Schreiber Aff. ¶¶ 11-21). Specifically, plaintiffs set forth the amount of contributions owed for each period, the amounts paid, and the balance that remains due and owing. These calculations are set forth below:

| WEEK ENDING | FUND | AMOUNT OWED | AMOUNT PAID | BALANCE DUE |
|---|---|---|---|---|
| 09/23/05 | Welfare | $354.00 | $265.50 | $88.50 |
| 09/23/05 | Pension | $244.00 | $183.00 | $61.00 |
| 09/23/05 | Annuity | $282.10 | $225.75 | $56.35 |
| 09/23/05 | Job Training | $4.00 | $3.00 | $1.00 |
| 09/23/05 | Vacation/ Sick Leave | $120.00 | $90.00 | $30.00 |
| 01/06/06 | ALL FUNDS | $200.82 | 0 | $200.82 |
| 01/13/06 | ALL FUNDS | $803.33 | 0 | $803.33 |
| 01/20/06 | ALL FUNDS | $200.82 | 0 | $200.82 |
| 01/27/06 | ALL FUNDS | $200.82 | 0 | $200.82 |
| 05/26/06[5] | ALL FUNDS | $401.64 | 0 | $401.64 |
| 06/09/06 | ALL FUNDS | $200.82 | 0 | $200.82 |
| 06/16/06 | ALL FUNDS | $401.64 | 0 | $401.64 |
| **TOTAL DELINQUENT CONTRIBUTIONS OWED:** | | | | **$2,646.74** |

---

[5]According to the remittance reports submitted by defendant, no hours were worked during the weeks ending May 5, 2006, May 12, 2006, May 19, 2006, June 2, 2006, June 23, 2006, and June 30, 2006. (Schreiber Aff. ¶¶ 16, 18, 21).

8

Having reviewed the Schreiber Affirmation and the remittance reports attached thereto, the Court finds that defendant owes plaintiffs a total of $2,646.74 in delinquent contributions. In so finding, the Court notes that defendant has not challenged these figures or objected in any way to plaintiffs' request for damages. Accordingly, it is respectfully recommended that plaintiffs be awarded $2,646.74 in delinquent contributions.

b) Interest and Liquidated Damages

Under 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest and liquidated damages for the period of delinquency. As previously noted, plaintiffs indicate that the CBA and Declaration of Trust provide for interest to be calculated at the rate of 18% per annum, and liquidated damages to be assessed at the rate of 20% of the unpaid contributions. (Id. ¶ 10, Exs. B, C). Thus, in addition to seeking an award of delinquent contributions, plaintiffs seek an award of interest accrued during the period of delinquency in the amount of $216.64, and liquidated damages in the amount of $682.79. (Schreiber Aff. ¶¶ 11-21, 26).

Based on the remittance reports prepared by defendant and payment information provided by the plaintiffs, the amount of interest owed on the delinquent contributions, calculated through August 11, 2006 at the rate of 18% per annum, is as follows:

| INTEREST | | |
|---|---|---|
| WEEK ENDING | NO. OF MONTHS | INTEREST |
| 09/23/05 | 10.25 | $36.42[6] |
| 01/06/06 | 7 | $21.09 |
| 01/13/06 | 6.75 | $81.34 |
| 01/20/06 | 6.5 | $19.58 |
| 01/27/06 | 6.25 | $18.83 |
| 05/26/06 | 2.25 | $13.56 |
| 06/09/06 | 1.75 | $5.27 |
| 06/16/06 | 1.5 | $9.04 |
| **TOTAL** | | **$205.13** |

The amount of liquidated damages to which plaintiffs are entitled under the CBA and Declaration of Trust, calculated at the rate of 20% of the unpaid contributions, is as follows:

---

[6] While plaintiffs' papers indicate that interest on the unpaid contributions for the week ending September 23, 2005 totals $47.93, the Court's calculations indicate that the actual interest accrued on the unpaid contributions for that week is $36.42.

## LIQUIDATED DAMAGES

| WEEK ENDING | LIQUIDATED DAMAGE AMOUNT |
|:---:|:---:|
| 09/23/05 | $47.37[7] |
| 01/06/06 | $40.16 |
| 01/13/06 | $160.67 |
| 01/20/06 | $40.16 |
| 01/27/06 | $40.16 |
| 05/26/06 | $80.33 |
| 06/09/06 | $40.16 |
| 06/16/06 | $80.33 |
| **TOTAL** | **$529.34** |

Having reviewed the Schreiber Affirmation and supporting documentation, this Court respectfully recommends that plaintiffs be awarded $205.13 in interest for the periods of delinquency. The Court further respectfully recommends that plaintiffs be awarded $529.34 in liquidated damages.

C.  Attorneys' Fees and Costs

Plaintiffs also seek attorneys' fees and costs in the amount of $3,929.52, representing services performed by counsel through August 8, 2006 in connection with plaintiffs' efforts to obtain this judgment. In accordance with New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted the Affirmation of

---

[7] While plaintiffs indicate that liquidated damages for the period ending 9/23/05 total $200.82, the Court's calculations indicate that 20% of the unpaid principal – $236.85 – is actually $47.37.

Avram Schreiber, Esq., dated August 8, 2006, as well as contemporaneous billing records setting forth the dates on which services were rendered, the amount of time spent, the name of the attorney performing the services, and a description of services performed. (See Schreiber Aff. ¶ 22, Ex. E). Specifically, plaintiffs' counsel's Affirmation indicates that three attorneys and one paralegal performed services in connection with this matter. (Id. ¶ 22). Their rates are as follows: Avram H. Schreiber, an attorney admitted in 1969, charged $275.00 per hour; Cristina Cruz and Woomee Lee, associates admitted in 2005 and 2006 respectively, charged $200.00 per hour; and the paralegal charged $70.00 per hour. (Id.)

Based on a review of the description of the services rendered, this Court finds the amount of time logged in the matter to be reasonable and appropriate under the circumstances. Moreover, the rate charged for Mr. Schreiber's time logged on the case appears to be commensurate with billing rates utilized in fee awards in recent labor cases of comparable difficulty in the Eastern District of New York. See, e.g., King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (compensating Mr. Schreiber at a rate of $275.00 per hour in a default judgment issued under ERISA); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (finding to be reasonable a rate of $250.00 for partners' time logged on a "simple and straightforward appeal" in an action brought under ERISA). Accordingly, this Court recommends that Mr. Schreiber's time billed on the case be compensated at a rate of $275.00 per hour.

However, the rates charged for time billed by the two associates, who were only very recently admitted to the practice of law (see Schreiber Aff. ¶ 22), seem high for attorneys of their experience in an action of this nature. See, e.g., King v. STL Consulting, LLC, 2006 WL

3335115, at *7-8 (calculating a fee award in an ERISA default using a rate of $100.00 per hour for an associate admitted in 2005); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. at 353 (compensating associates who billed time in an ERISA action at $150.00 per hour). Therefore, this Court respectfully recommends that the associates be compensated at a rate of $150.00 per hour.[8] The Court further recommends that the paralegal's time be compensated at $70.00 per hour.

Having performed the aforementioned rate reductions, the Court respectfully recommends that plaintiffs be awarded $2,877.02 in attorneys' fees. The Court further respectfully recommends that, pursuant to 29 U.S.C. § 1132(g)(2)(D), plaintiffs be awarded $362.17 in costs.

D.   Permanent Injunction

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure future compliance with the CBA, Declaration of Trust, and ERISA requirements. (Compl. ¶ 26). A permanent injunction is an appropriate remedy under Section 1132(g)(2)(E) of ERISA, which states that the Court may, in a successful action to enforce the requirements of Section 1145, award an ERISA plan "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see King v. STL Consulting, LLC, 2006 WL 3335115, at *8; King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the Court may issue an injunction provided that plaintiffs

---

[8]Plaintiffs' submissions contain some entries detailing clerical tasks for which the associates charged reduced paralegal rates. The Court has not further reduced the rates for those entries.

meet the requirements for obtaining a permanent injunction, which include a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Ctrs. Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)).

In this case, while plaintiffs have provided the Court with sufficient documentation concerning their request for damages, they have failed to submit any evidence to support their claim that injunctive relief is warranted. See id. They have not shown that the remedy at law is inadequate, nor have they shown "that defendant intends to frustrate any judgment . . . or show 'contempt for the judicial process.'" Id. (internal citations omitted). Thus, this Court respectfully recommends that plaintiffs' request for a permanent injunction be denied without prejudice at this time, subject to a further submission by plaintiffs detailing their basis for requesting injunctive relief.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs be awarded damages in the amount of $6,620.40, representing the sum of $2,646.74 in delinquent contributions owed, $205.13 in prejudgment interest, $529.34 in liquidated damages, and $3,239.19 in attorneys' fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human

Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
February 7, 2007

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge